UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
VINCENT ESPOSITO; JULY 4 EVER  :
FIREWORKS, INC.; and JULY 4 EVER CO., :
LTD.,                          :
              Plaintiffs,        :
v.                             :   **OPINION AND ORDER**
                                              :   19 CV 2025 (VB)
INFORMATION TECHNOLOGY CORP. OF :
THE TRI-STATES; FIREWORKS      :
EXTRAVAGANZA, INC.; J&J COMPUTING, :
INC., d/b/a FIREWORKS EXTRAVAGANZA; :
and JOHN SAGARIA,              :
              Defendants.        :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiffs Vincent Esposito; July 4 Ever Fireworks, Inc. ("July 4 Ever Inc."); and July 4 Ever Co., Ltd. ("July 4 Ever Co."), bring this action against defendants Information Technology Corp. of the Tri-States ("ITC"); Fireworks Extravaganza, Inc. ("FEI"); J&J Computing, Inc. d/b/a Fireworks Extravaganza ("J&J Computing"); and John Sagaria, alleging violations of the Lanham Act, the Anticybersquatting Consumer Protection Act ("ACPA"), and the New York General Business Law ("GBL"), as well as conversion and tortious interference in violation of New York law, and seeking to pierce the corporate veil. Defendants assert a counterclaim against Esposito for defamation.

       Now pending are the parties' cross-motions for summary judgment. Defendants seek judgment dismissing the amended complaint in its entirety. (Doc. #161). Plaintiffs seek judgment in their favor on all their claims except the veil-piercing claim; they also seek dismissal of defendants' counterclaim and other relief relating to defendants' conduct in discovery. (Doc. #162).

For the following reasons, the motions are GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted memoranda of law, declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.[1]

Vincent Esposito and John Sagaria were friends until they had a falling out in 2016. They were also competitors in the fireworks industry, and they both at times owned businesses that put on fireworks displays for holidays and other events.

July 4 Ever Inc. is still in the fireworks industry. It is solely owned by Esposito's brother, a nonparty.

Around 2011, Esposito pleaded guilty to federal gun charges. As a result of the guilty plea, Esposito surrendered his license to perform commercial fireworks shows and was disqualified from owning any regulated explosives for life. According to Esposito, he now works as a salesperson for July 4 Ever Inc. (Doc. #165 ("Esposito Aff.") ¶ 15). According to

---

[1] Statements of undisputed material facts "will be deemed to be admitted for the purposes of the motion unless specifically controverted by" the opposing party, and "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(c)–(d). If an opposing party does not "actually dispute" specific statements of material fact or provide a citation to admissible evidence in attempting to do so, the Court may find such statements undisputed. Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600–01 (S.D.N.Y. 2018), aff'd, 798 F. App'x 682 (2d Cir. 2019) (summary order). On several occasions, the parties do not actually dispute certain statements of material fact; they either cite to evidence that does not actually controvert the corresponding statement of material fact or do not cite to admissible evidence at all. The Court has independently reviewed statements of material facts the parties attempt to controvert in this manner and, when supported by admissible evidence, the Court deems them undisputed for the purpose of the motion.

defendants, the felony conviction means Esposito can no longer work in the fireworks industry. (Doc. #164, at 4).

Esposito is also the sole owner of July 4 Ever Co.[2]  According to Esposito, July 4 Ever Co. maintains July 4 Ever Inc.'s website.  (Esposito Aff. ¶ 15).  According to defendants, July 4 Ever Co. only functions as a real estate holding company, and its sole asset is a ninety-nine-year lease for property in Walden, New York.  (See Doc. #164-2 ("Esposito Dep."), at 26–27).

Sagaria is the sole owner of ITC, which sells and repairs Apple products.  He is also the sole owner of FEI and J&J Computing.  J&J Computing is in the fireworks industry.  According to Sagaria's deposition in this case, FEI is not and has never been in the fireworks industry. (Doc. #164-5 ("Sagaria Dep."), at 62–63).  Sagaria has, however, testified in other litigation that FEI's "primary business is designing and providing professional fireworks displays."  (See, e.g., Doc. #137-2 ¶ 15).

This litigation arises from a dispute over a website with the domain name july4ever.com (the "website"), which Esposito registered on November 29, 1998.  (Doc. #166-2).  At one time, Esposito hired defendants to design and maintain the website.  (Esposito Dep. at 97).

From 2017 to April 2020, defendants caused the website to redirect to their website, FWExtravaganza.com.  (See Doc. 122-1 ¶¶ 37, 47 ("Sagaria Aff."); Sagaria Dep. at 109).  In April 2020 and thereafter, defendants caused the website to redirect to a blank page.  (Sagaria Aff. ¶ 47).

---

[2]  Defendants contend July 4 Ever Co. should be dismissed from this case because it is a dissolved corporation and thus lacks capacity to sue.  The Court disagrees.  A corporation's capacity to sue is determined "by the law under which it was organized."  Fed. R. Civ. P. 17(b)(2).  July 4 Ever Co. was organized in New Jersey and, under New Jersey law, a dissolved corporation still has capacity to sue.  N.J. Stat. Ann. § 14A:12-9(2)(e); see, e.g., MWH Int'l, Inc. v. Inversora Murten S.A., 2012 WL 3155063, at *6 (S.D.N.Y. Aug. 3, 2012).  Accordingly, even if July 4 Ever Co. were dissolved, it could still be a plaintiff in this litigation.

The parties dispute, however, who owned the website when it was being redirected.

Defendants offer evidence plaintiffs voluntarily transferred the website to ITC in 2007, and thereafter ITC owned the website. (See Doc. #164-6). Sagaria testified that, because he owned the website, he was within his rights to cause it to redirect. (See, e.g., Sagaria Dep. at 97, 102, 108–09).

Plaintiffs offer evidence the transfer of the website to ITC in 2007 was a mistake, and the website was promptly transferred back to plaintiffs. (Esposito Aff. ¶¶ 7–8). Plaintiffs point to an email from Sagaria to Esposito dated March 21, 2007, in which Sagaria informed Esposito the website was mistakenly transferred to ITC but Sagaria "changed it back to July 4 Ever." (Doc. #137-5 at ECF 2).[3]

Separately, defendants allege a counterclaim against Esposito for defamation. Specifically, defendants assert that, around April 14, 2019, Esposito falsely told a representative of the Town of Walkill that there was a judgment against J&J Computing and FEI. The parties agree a judgment was entered against defendants in Supreme Court, Orange County, on March 25, 2019. (See Doc. #166-8).

**DISCUSSION**

I.   Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See id. It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for it. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If "there is any evidence in the record from

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

which a reasonable inference could be drawn in favor of the [non-moving] party" on the issue on which summary judgment is sought, "summary judgment is improper." See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

In deciding cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration" and need not ultimately "grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).

Moreover, pursuant to Rule 56(d), if a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

II.     Cross-Motions for Summary Judgment

    A.     False Designation of Origin

The parties assert there is no genuine dispute of material fact with respect to plaintiffs' false designation of origin claim, and each side contends it is entitled to summary judgment.

The Court agrees summary judgment should be granted in favor of defendants, but for reasons different than those articulated by defendants.

Section 43(a) of the Lanham Act establishes a private right of action for:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . any false designation of origin . . . , which . . . is

>likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1).

Section 43(a) has been construed to provide for two types of claims: so-called "passing off" claims and "reverse passing off" claims. "Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's. Reverse passing off . . . is the opposite: The producer misrepresents someone else's goods or services as his own." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27 n.1 (2003).

Although the Lanham Act is "to be broadly construed," Section 43(a) "does not have boundless application as a remedy for unfair trade practices." Alfred Dunhill Ltd. v. Interstate Cigar Co., 499 F.2d 232, 236–37 (2d Cir. 1974).

Here, even taking plaintiffs' version of events as true, they do not state a false designation of origin claim. The parties agree defendants redirected plaintiffs' website to defendants' own website from 2017 to 2020, but there is no suggestion that, during that time, defendants were using their website to pass off plaintiffs' products as their own or pass off their own products as made by plaintiffs. Plaintiffs have thus failed to state either a passing off or reverse passing off claim. See, e.g., Philbrick v. eNom, Inc., 593 F. Supp. 2d 352, 371–72 (D.N.H. 2009) (plaintiff Philbrick's Sports did not state designation of origin claim against defendants who registered the domain "philbrickssports.net" absent allegations that defendants were passing off their own products as plaintiff's); JTH Tax LLC v. DM3 Ventures, Inc., 2020 WL 6551214, at *6–7 (E.D. Va. Nov. 6, 2020) (plaintiff Liberty Tax did not state false designation of origin claim based on defendants' redirection of www.libertycanhelp.com to defendants' website).

7

Accordingly, plaintiffs' false destination of origin claim (Count I) must be dismissed.

B.      Cybersquatting

The parties assert there is no genuine dispute of material fact with respect to plaintiffs' cybersquatting claim, and each side contends it is entitled to summary judgment.

The Court disagrees.

Congress passed the ACPA, 15 U.S.C. § 1125(d)(1)(A), "to prevent bad-faith actors from registering but not using domain names in order to extract payment from the rightful owners of the marks, who find their trademarks locked up and are forced to pay for the right to engage in electronic commerce under their own brand name."  Soter Techs., LLC v. IP Video Corp., 523 F. Supp. 3d 389, 402 (S.D.N.Y. 2021).

Relevant here, the ACPA provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that—
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

15 U.S.C. § 1125(d)(1)(A).  That is, to prevail on a cybersquatting claim, a plaintiff must show (i) it possesses a protected mark; (ii) defendants intended to, in bad faith, profit from that mark; and (iii) defendants registered, trafficked in, or used a domain name that is either "identical or confusingly similar" to that mark.

"The [ACPA] lists nine factors to assist courts in determining when a defendant has acted with a bad faith intent to profit from the use of a mark."  Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 498 (2d Cir. 2000) (citing 15 U.S.C. § 1125(d)(1)(B)(i)).  These factors

are non-exclusive, and a court may also consider the "unique circumstances" of a particular case. Id. at 498–99.

Here, the parties do not appear to dispute the first element of a cybersquatting claim (that plaintiffs possess a protected mark) or the third element (that defendants used a domain name identical to that mark).[5]  However, there are genuine disputes of material fact as to whether defendants possessed a bad faith intent to profit from their use of the website.

On the one hand, there is evidence in the record from which a reasonable jury could conclude defendants intended in bad faith to profit from the website.  For example, one of the statutory factors to consider in determining bad faith is a defendant's "offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services."  15 U.S.C. § 1125(d)(1)(B)(i)(VI).  Here, Sagaria has offered to sell the website back to Esposito (Doc. #170-1 ¶ 44),[6] and there is no evidence he ever used the website to bona fide offer goods or services.  This "tips significantly in favor of bad faith."  Am. Lecithin Co. v. Rebmann, 2020 WL 4260989, at *12 (S.D.N.Y. July 24, 2020).

Moreover, the "unique circumstances" of this case could also permit a reasonable jury to find defendants acted in bad faith.  Esposito and Sagaria clearly have an acrimonious

---

[5]  The parties' briefs do not clearly address any element of a cybersquatting claim.  The parties, instead, focus on who owned the website when it was redirected and whether plaintiffs were harmed by the redirection.  The Court construes these arguments to address whether defendants were acting with bad faith intent to profit when they were redirecting the website.

[6]  Evidence of a settlement offer is inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a)(1).  Such evidence is admissible when, as here, it is considered for another purpose.  Id. r. 408(b); see, e.g., Olivarius v. Mermel, 298 F. Supp. 3d 661, 673 n.4 (S.D.N.Y. 2018) (considering defendant's settlement offer in evaluating the bad faith element of a cybersquatting claim).

9

relationship, both personal and professional, which has given rise to multiple lawsuits in this District and elsewhere, and a reasonable jury could find this animosity motivated defendants. See, e.g., Omega S.A. v. Omega Eng'g, Inc., 228 F. Supp. 2d 112, 131–34 (D. Conn. 2002) (denying summary judgment on bad faith element of cybersquatting claim when "[l]ooming in the background of the facts giving rise to th[e] case is the specter of at least fifteen years of strife, acrimony, and legal battle between the parties over each party's right to use the trademark 'Omega' in their respective commercial spheres of operation").

On the other hand, there is also evidence from which a reasonable juror could conclude defendants were not using the website with a bad faith intent to profit. That is, there are genuine disputes of material fact as to who owned the website when it was being redirected. The parties agree the website was transferred from Esposito to ITC in 2007, but they dispute what followed. Citing an email from Sagaria, plaintiffs contend the 2007 transfer was in error and the website was promptly transferred back to plaintiffs. (See Doc. #137-5 at ECF 2). Defendants respond with evidence the website was transferred to defendants in 2011 or 2012 as part of an agreement among the parties. (See Doc. #164-6; Sagaria Dep. at 122–24). A reasonable jury could thus conclude that plaintiffs sold defendant the website, in which case defendants were not using it in bad faith.

Accordingly, plaintiffs' cybersquatting claim (Count II) may proceed.

C.   GBL Section 133

Each side contends it is entitled to judgment as a matter of law on plaintiffs' GBL Section 133 claim.

The Court agrees summary judgment should be granted in favor of defendants, but again for reasons different than those articulated by defendants.

10

Section 133 provides:

> No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes or for the purposes of trade, or for any other purpose, any name, designation or style, or any symbol or simulation thereof, or a part of any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation.

To prevail on a Section 133 claim, "a plaintiff must demonstrate (1) intent to deceive the public, and (2) the assumption, adoption, or use of a corporate, assumed, or trade name of another." Caliko, SA v. Finn & Emma, LLC, 2022 WL 596072, at *13 (S.D.N.Y. Feb. 28, 2022). That is, a "[p]laintiff must show that Defendants used its name or symbol as part of Defendants' corporate, assumed or trade name for purposes of advertising with an intent to deceive." U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 176 (S.D.N.Y. 2001).

Here, plaintiff offers no evidence defendants have assumed, adopted, or used plaintiffs' name. See, e.g., U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d at 176. Although the parties agree the website redirected to defendants' website from 2017 to 2020, plaintiff does not, for example, offer evidence that defendants' website included plaintiffs' names or trademarks.

Moreover, plaintiffs offer no evidence to suggest that, even if defendants' use of the website constituted adoption of plaintiffs' trade name, defendants intended to deceive the public. See, e.g., Frank's Rest., Inc. v. Lauramar Enters., Inc., 273 A.D.2d 349, 350 (2d Dep't 2000). This "complete failure of proof" on two elements of plaintiffs' Section 133 claim warrants entry of summary judgment in favor of defendants. Celotex Corp. v. Catrett, 477 U.S. at 322–23.

Accordingly, plaintiffs' Section 133 claim (Count III) must be dismissed.

D.   GBL Section 349

Each side asserts there is no genuine dispute of material fact with respect to plaintiffs' GBL Section 349 claim and that it is entitled to summary judgment.

The Court agrees with defendants.

Section 349 provides: "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state are hereby declared unlawful."

To prevail on a Section 349 claim, a plaintiff must establish an "actual," but "not necessarily pecuniary," injury. Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). Such injury may not be "speculative" or "uncertain." See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2, 419 F. Supp. 3d 668, 708–09 (S.D.N.Y. 2019).

Even a plaintiff seeking solely statutory damages must establish an actual injury. N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action . . . to recover his actual damages or fifty dollars, whichever is greater." (emphasis added)).

Plaintiffs do not offer any proof of actual injury. Accordingly, defendants' motion must be granted. See, e.g., RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 321–22 (E.D.N.Y. 2021) (granting summary judgment on Section 349 claim for equitable relief when plaintiff offered no proof of actual injury).

Moreover, to the extent plaintiffs seek to defer ruling on defendants' motion pursuant to Rule 56(d) so they can obtain additional discovery, this request must be denied.

In opposition to defendants' motion, plaintiffs contend they cannot identify any lost customers because defendants provided relevant customer lists designated "attorneys' eyes

12

only." To the extent plaintiffs are moving under Rule 56(d) to defer ruling on summary judgment until they obtain this supposedly necessary discovery on the scope of their injuries—that is, the customer lists not marked attorneys' eyes only—plaintiffs' request is insufficient.

First, plaintiffs have not submitted an "affidavit or declaration" explaining why they cannot present the supposedly essential facts. Fed. R. Civ. P. 56(d).

Second, and more importantly, even if these arguments were properly presented to the Court, plaintiffs' counsel does not adequately explain why his clients needed to view defendants' customer lists to identify any of plaintiffs' lost customers. As Magistrate Judge McCarthy observed in her ruling on January 27, 2021, plaintiffs' counsel had numerous ways to identify lost customers without his clients actually reviewing defendants' customer lists. To justify relief under Rule 56(d), a party "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative." Paddington Partners v Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994). Having failed to do so, plaintiffs' request under Rule 56(d) must be denied.

Accordingly, plaintiffs' Section 349 claim (Count IV) must be dismissed.

E.   Conversion

Each side asserts there is no genuine dispute of material fact with respect to plaintiffs' conversion claim and that it is entitled to summary judgment.

The Court disagrees.

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006). A "key element[ ] of conversion" is "plaintiff's possessory right or interest in the property" at issue. Id. at 50.

13

Here, as explained in Part B, supra, there are genuine disputes of material fact as to who owned the website from 2017 onwards, that is, when the website was being redirected to FWExtravaganza.com or to a blank page.  Thus, summary judgment is inappropriate.  See, e.g., Cretaro v. Huntington, 2022 WL 817537, at *2 (4th Dep't Mar. 18, 2022); Ciprich v. Atwood, 163 A.D.3d 1332, 1334–35 (3d Dep't 2018).

Accordingly, plaintiff's conversion claim (Count V) may proceed.

F.  Tortious Interference with Prospective Economic Advantage

Each side asserts there is no genuine dispute of material fact with respect to plaintiffs' tortious interference with prospective economic advantage claim and that it is entitled to summary judgment.

The Court agrees with defendants.

To succeed on a claim for tortious interference with prospective economic advantage under New York law, "a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 261 (2d Cir. 2015).  To that end, for such a claim to survive motion practice, a plaintiff must identify "a specific business relationship with an identified third party with which the defendants interfered."  Mehrhof v. Monroe-Woodbury Cent. Sch. Dist., 168 A.D.3d 713, 714 (2d Dep't 2019) (collecting cases).

Plaintiffs have not identified any such relationship.  Thus, plaintiffs' tortious interference claim fails.  And, as explained in Part D, supra, to the extent plaintiffs seek relief pursuant to Rule 56(d), such request must be denied.

Accordingly, plaintiffs' tortious interference claim (Count VI) must be dismissed.

G.    <u>Piercing the Corporate Veil</u>

Defendants contend they are entitled to summary judgment on plaintiffs' veil-piercing claim.

The Court agrees.

Under New York law, a party seeking to pierce the corporate veil must make two showings: "1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." <u>MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC</u>, 268 F.3d 58, 63 (2d Cir. 2001).

In conducting a veil-piercing analysis, courts may consider the following factors to determine whether the first requirement, domination over the corporation, is met:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, <u>i.e.</u>, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

<u>William Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.</u>, 933 F.2d 131, 139 (2d Cir. 1991).

Plaintiffs offer no evidence in support of their veil-piercing claim. In opposition to defendants' summary-judgment motion, plaintiffs point only to Sagaria's statements in an affidavit that "his businesses – *plural* – are competitors with Plaintiffs in the fireworks business." (Doc. #168 ("Pls. Mem."), at 19, 23). That Sagaria, who owns the corporate defendants, considers those corporations "his businesses" does not suggest, for example, that

15

defendants do not observe corporate formalities or are inadequately capitalized, that defendants guarantee or pay each other's debts, or that defendants freely use one another's property. In other words, there is "a complete failure of proof" concerning plaintiffs' veil-piercing claim. Celotex Corp. v. Catrett, 477 U.S. at 322–23.

Accordingly, plaintiffs' veil-piercing claim (Count VII) must be dismissed.

H. Defamation

Esposito contends he is entitled to summary judgment on defendants' defamation counterclaim because the allegedly defamatory statement was substantially true.

The Court agrees.

Truth is an absolute defense to a defamation claim. Carter v. Visconti, 233 A.D.2d 473, 474 (2d Dep't 1996). That is, summary judgment is appropriate on a defamation claim when the moving party "demonstrat[es] that the challenged statements were substantially true." Schaefer v. Brookdale Univ. Hosp. & Med. Ctr., 66 A.D.3d 985, 985 (2d Dep't 2009).

Here, defendants concede Esposito's allegedly defamatory statement made in April 2019—that there was a judgment against FEI and J&J—was substantially true. (Doc. #169 ¶ 2; see Doc. #166-8 (copy of judgment against defendants dated March 25, 2019)). Thus, Esposito is entitled to summary judgment.[7]

Accordingly, defendants' counterclaim must be dismissed.

---

[7] Defendants assert the judgment against them was vacated the same day Esposito made this statement pursuant to a stipulation among the parties. (Doc. #170, at 9). They, however, offer no evidence of such stipulation. Moreover, even if defendants did offer such evidence, the fact the judgment was later vacated does not render the statement untrue at the time it was made.

III.	Other Relief

Plaintiffs also seek (i) a pretrial hearing to determine whether Sagaria committed perjury at his deposition; and (ii) vacatur of the attorneys' eyes–only designation on customer lists produced by J&J Computing in discovery.

Both requests are denied.

First, with respect to the pretrial hearing, the Court construes this request as a motion for sanctions pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, Amway Corp. v. Shapiro Express Co., 102 F.R.D. 564, 569–70 (S.D.N.Y. 1984) (imposing Rule 37 sanctions on defendant after he "repeatedly perjured himself" at his deposition), and the Court's inherent powers.  See Bower v. Weisman, 674 F. Supp. 109, 112 (S.D.N.Y. 1987) (imposing sanctions on plaintiff pursuant to the court's inherent powers after plaintiff perjured herself at her deposition). Whether to impose sanctions, and what sanction to impose, are decisions committed to the discretion of the district court.  See Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (per curiam).

Here, plaintiffs do not explain what will be gained by an evidentiary hearing or what sanction they seek to impose on defendants for Sagaria's purported misconduct.  Plaintiffs' opening brief suggests they seek additional documents from defendants (see Pls. Mem. at 16–17, 20), but discovery closed on March 18, 2021, over a year ago, and the Court will not reopen it. Accordingly, this request must be denied.

Second, with respect to vacatur of the attorneys' eyes–only designation on J&J Computing's customer lists, this request is untimely.  This case was referred to Magistrate Judge McCarthy for general pretrial supervision on February 25, 2020.  (Doc. #58).  Judge McCarthy denied the requested relief on December 3, 2020.  After plaintiffs moved for reconsideration,

Judge McCarthy again denied the requested relief on January 27, 2021.  The instant request was made on August 31, 2021, and is thus an untimely appeal of Judge McCarthy's rulings and will not be considered by this Court.  Fed. R. Civ. P. 72(a).

Accordingly, plaintiffs' requests for relief related to defendants' conduct in discovery must be denied.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiffs' cross-motion is GRANTED IN PART and DENIED IN PART.

Plaintiffs' Lanham Act false designation of origin (Count I), GBL Section 133 (Count III), GBL Section 349 (Count IV), tortious interference with prospective economic advantage (Count VI), and veil-piercing (Count VII) claims, as well as defendants' counterclaim, are DISMISSED.

Plaintiffs' claims for cybersquatting (Count II) and conversion (Count V) may proceed.

Plaintiffs' other requests for relief are DENIED.

The Court will conduct a case management conference on **May 20, 2022, at 2:30 p.m.,** at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what efforts they have made and will make to settle this case.  The conference will be held in person at the White Plains courthouse, courtroom 620.

The Clerk is instructed to terminate the motions.  (Docs. ##161, 162).

Dated: April 18, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge